UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RYAN LEWIS STEINHOFF,

   *Plaintiff,*

   v.

CHARLES RAMBERG,
CODY KOWALCZYK,
MATTHEW MALOVRH,
CLARK COUNTY, AND
TAYLOR COUNTY                   Case No: 3:21-cv-00664

   *Defendants.*

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Plaintiff Ryan Lewis Steinhoff, by his attorneys, Strang Bradley, LLC, files this brief in support of his motion for partial summary judgment against Defendant Kowalczyk. Specifically, the Court should grant summary judgment to Steinhoff, as to liability only, against Kowalczyk because Kowalczyk used excessive force by tackling Steinhoff to the ground after Steinhoff surrendered to Kowalczyk.

## I. INTRODUCTION

It is still pitch-black outside at 5:00 am on 28 October 2018. Ryan Steinhoff is asleep in a camper on his friend's land in rural Medford, Wisconsin. Unbeknownst to him, he is one of the subjects of a search warrant issued by a Taylor County judge the day before.

Defendant Cody Kowalczyk, a detective with the Taylor County Sheriff's Office, had sought a no-knock warrant but received only a knock warrant.

Steinhoff stirs. Something may be going on outside. The door of the camper suddenly flies open, bounces off the outside of the camper, and slams back shut. The door opens again. Armed men, dressed in black and camouflage, appear in the doorway. They are yelling. They are pointing their firearms at Steinhoff. Among them is Detective Kowalczyk.

A law enforcement officer yells that they are with a Sheriff's Department. Another yells for Steinhoff to show them his hands. They do not say why they are there.

What happens next is captured on body-worn camera footage. Plaintiff's Proposed Findings of Fact, ¶¶10, 38 (citing Ex. A (7:35–7:50)). An officer yells at Steinhoff, "Get out. Turn around. Turn around!"

From Steinhoff's perspective, there are officers directly outside of the camper in front of him. There are more coming from his right.

Steinhoff makes the intelligent decision to comply. He walks out of the camper. Slowly and deliberately, he begins to turn around to his left. He puts his hands up.

Then, an officer yells for Steinhoff to put his hands behind his back. Immediately after that, however, Kowalczyk grabs Steinhoff and takes him to the ground. As Steinhoff falls, he yells, "Hey! Come on, man! Hey, what the fuck!" Steinhoff ended up with a cut on his ear requiring stitches.

The Seventh Circuit has said repeatedly, for over 20 years, law enforcement cannot use force on subdued, nonresistant suspects. *Snowden v. Henning*, No. 21-1463, 2023 WL 4195838, at *7 (7th Cir. June 27, 2023). And the United States Supreme Court has required,

since the 1990s (although it did so in recognition of centuries-old common law), that when officers are executing a warrant, they need to announce their purpose. *Wilson v. Arkansas*, 514 U.S. 927, 931–33, 936 (1995); *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997).

This, for a simple reason. People are not required to answer the door for officers seeking consensual interactions. *Kentucky v. King*, 563 U.S. 452, 463 (2011); *Florida v. Jardines*, 569 U.S. 1, 8 (2013); *see Wilson*, 514 U.S. at 931–32. And officers cannot arrest someone in their home without a warrant or probable cause. *Payton v. New York*, 445 U.S. 573, 590 (1980). When an officer comes to a person's door without a warrant, the person has a choice: he can submit to arrest, or he can wait to see whether a neutral magistrate will issue a warrant. *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 689–90 (7th Cir. 2001).

Steinhoff, no announcement given, decided to succumb to the officers' demands. Kowalczyk tackled him anyway.

The Court should therefore grant Steinhoff's motion for partial summary judgment against Kowalczyk. Kowalczyk's actions violated the Fourth Amendment by using excessive force. *Graham v. Connor*, 490 U.S. 386, 388, 396 (1989). Specifically, Kowalczyk used unnecessary force on a subdued, compliant, nonresistant Steinhoff. *Abbot v. Sangamon County, Ill.*, 705 F.3d 706, 732 (7th Cir. 2013); *Morfin v. City of E. Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). Steinhoff had surrendered. *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009).

To the extent that Kowalczyk found himself in a tense situation, under the totality of the circumstances, this was due to the officers' decisions to execute the warrant in the dead of morning, to not wait for a response after announcing who they were, and to not announce their purpose. *Doornbos v. City of Chicago*, 868 F.3d 572, 583 (7th Cir. 2017); *see*

*Richards*, 520 U.S. at 387. This whole case could've been avoided if the officers had given Steinhoff the opportunity to compose himself, answer the door, and submit to the officers. *See Richards*, 520 U.S. at 393, n.5.

Other issues remain in the case that must be resolved at trial. These include the cause and extent of Steinhoff's damages, including the cut on his ear; whether Defendant Malovrh also tackled Steinhoff with Kowalczyk; and what happened when officers were on the ground with Steinhoff. Steinhoff anticipates that the defendants will file a motion for summary judgment. That motion should be denied, except as to Defendant Ramberg. Discovery has revealed that Ramberg did not make contact with Steinhoff until Steinhoff was on the ground and did not have ample opportunity to intervene in the excessive force. He can therefore be dismissed from the case.

But this claim, that Kowalczyk decentralized (to use his term) Steinhoff without reasonably needing to do so, is ripe for summary judgment because of the body-worn camera footage. *Scott v. Harris*, 550 U.S. 372, 379–80 (2007). All Kowalczyk can do at this point to justify his actions is contradict the video evidence against him. That does not, however, create a genuine issue of material fact. *Id.* at 380–81. Partial summary judgment against Kowalczyk is therefore appropriate.

## II. SELECTED FACTUAL ISSUES

In an effort to not repeat Plaintiff's Proposed Findings of Fact ("PPFOF"), Steinhoff here simply attempts to anticipate some specific factual issues. Steinhoff's proposed findings of fact are cast in the light most reasonable to Detective Kowalczyk. It is important to note, however, that Kowalczyk's report and deposition testimony, in some key areas, are

4

in conflict with the body-worn camera footage. At summary judgment, the Court should construe the facts "in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81.

**A. Steinhoff did not show his hands when he was ordered to, but the officers, including Defendant Kowalczyk, saw that Steinhoff's hands were empty.**

This cannot be discerned from the video, therefore on Steinhoff's motion for partial summary judgment (only), it is conceded that, *inside the camper*, the officers commanded Steinhoff to show his hands and he did not do so. PPFOF, ¶35. Nevertheless, Defendants Kowalczyk, Malovrh, and Ramberg all testified that they did not see anything indicating that Steinhoff was armed when he was exiting the camper. *Id.*, ¶37.

**B. Once outside of the camper, Steinhoff, to the extent he was capable of doing so, followed all orders and commands.**

Just before Steinhoff exited the camper, he was ordered to "get out" and "turn around." *Id.*, ¶40.

First, it cannot be disputed that Steinhoff came out of the camper after he was ordered to do so. *Id.*, ¶¶39–41. This is on video. *Id.*

Second, as ordered to do so, Steinhoff turned around. *Id.*, ¶42. When he came out of the camper, the officers were directly in front of him and also to his right. *Id.*, ¶42. So, Steinhoff began turning to the left. *Id.* This is also on video. *Id.*

And third, although Steinhoff was ordered to put his hands behind his back, Kowalczyk decentralized him before he was able to do so. *Id.*, ¶¶44–45. In his deposition, Kowalczyk claimed he is unable to say whether it was possible for Steinhoff to comply with the command. *See* Kowalczyk Dep. Tr. 33:24–34:10. But this is plainly contradicted by the video. PPFOF, ¶45 (citing Ex. A at 7:38–7:43).

Finally, the Court should not accept findings of fact based on the police reports in this case, to the extent they conflict with the video evidence. Defendant Malovrh initially claimed in his report that, once outside of the camper, Steinhoff was repeatedly ordered to put his hands up and he refused to do so. Ex. D at 2. During Malovrh's deposition, counsel for Steinhoff confronted Malovrh with the facts that (1) the video showed Steinhoff raising his hands, but Malovrh's report claimed that Steinhoff never raised his hands and (2) the video showed that no one told Steinhoff to put his hands up, but Malovrh's report claimed that Steinhoff ignored repeated commands to put his hands up. Malovrh Dep. Tr. 36:05–14; *Compare* Ex. A at 7:41 *with* Ex. D at 2. His report said:

> When Ryan came out of the camper he began walking along the camper. Ryan put his hands partially up and then brought them back down towards his jacket. *Ryan was told repeatedly and loudly to put his hands up and refused to comply.* Ryan then lowered his arms further and turned to face south in an attempt to flee.

Ex. D at 2 (emphasis added).

Malovrh explained the discrepancy by saying that in his report he meant to say that, *inside* the camper, he had ordered Steinhoff to put his hands up and Steinhoff did not do so *inside* the camper. He acknowledged, however, that Steinhoff did show him his hands, and that Steinhoff may not have been told to put his hands up. But his main point was that his report was not intentionally inaccurate. Here's the explanation:

> That sentence would be out of order. What I was trying to imply is that when we made contact with him when he was inside of the building and first walking out, he was told more than once to put his hands up, which it -- it may-- now, after listening to you and pointed out, may have not been told to put his hands up. He showed me his hands. But that's what I was trying to say, is prior to coming out and when he first came out, his hands were not up. Repeatedly told that. And once he came out, he put them up slightly and then they came back down.

Malovrh Dep. Tr. 36:03–37:05.

Thus, important for our purposes here, Malovrh's report does not dispute that Steinhoff followed commands *once he was outside of the camper*.

### C. Steinhoff did not attempt to flee. And Steinhoff did not resist arrest *before* he was decentralized.

The video shows this clearly. Steinhoff came out of the camper. PPFOF, ¶39. He was moving slowly and deliberately. *Id*, ¶¶38–42. He put his hands up. *Id.*, ¶43. Kowalczyk acknowledges that Steinhoff never ran. *See id.*, ¶39 (citing Kowalczyk Dep. Tr. 38: 14–25; 47:02–12). Thus, Kowalczyk, very specifically, claims that it looked as though Steinhoff was a "threat" of fleeing or presented an "opportunity to flee." Kowalczyk Dep. Tr. 45:17–46:18. More specifically, he claims that Steinhoff was walking away from the officers. Kowalczyk Dep. Tr. 32:05–11.

Again, Kowalczyk is contradicted by the video. Steinhoff, who was never told why the officers were there, complied with the order to come out of the camper, began to turn around as directed, and put his hands up. PPFOF, ¶¶40–45. He did not walk away from the officers, he did not attempt to flee, and he did not resist. *Id.* Kowalczyk then decentralized Steinhoff. *Id.*, ¶¶45–46.

Kowalczyk also claims that Steinhoff resisted him *once they were on the ground*. Kowalczyk Dep. Tr. 15:06–16. Steinhoff disputes this. Steinhoff Dep. Tr. 68:23–69:16, 70:01–22. On cross-motions for summary judgment, this is therefore in dispute. PPFOF, ¶51. But what's not in dispute is that Steinhoff did not physically resist the officers *before he was taken to the ground*. PPFOF, ¶¶43–45. Kowalczyk acknowledges this; he claims that he had to decentralize Steinhoff to eliminate the "threat" that Steinhoff would resist him. Kowalczyk Dep. Tr. 46:19–47:12.

7

But Kowalczyk's subjective disagreements with the video are irrelevant to liability. *Scott*, 550 U.S. at 380–81; *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987) (The "subjective inquiry into motive is incompatible with a Fourth Amendment standard that calls for objective analysis without regard to the officer's underlying intent or motivation"). *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012) ("Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide").

### III. STANDARD

The summary judgment standard is familiar. It is well established that summary judgment is only warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

But when there's video, the standard adjusts. *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott*, 550 U.S. at 379–80). When there's video, the Court should "view[] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81.

There's video here. And when the video is considered, no jury could find that Detective Kowalczyk's decision to decentralize Steinhoff was reasonable. Which is to say, Kowalczyk's subjective claims that Steinhoff posed a threat of flight and resistance do not create *genuine* disputes of facts. *Anderson*, 477 U.S. at 248. Moreover, because Kowalczyk's subjective beliefs are irrelevant in a use-of-force analysis, any dispute is also immaterial. *Lester*, 830 F.2d at 712; *Phillips*, 678 F.3d at 520.

8

## IV. ANALYSIS

The video is clear: Plaintiff Steinhoff walked out of his camper, followed commands, and put his hands up. PPFOF, ¶¶38–44. He surrendered. He was subdued. He was nonresistant. He didn't flee. Detective Kowalczyk took him to the ground anyway. *Id.*, ¶¶45–46. That was not reasonably necessary to make the arrest. *Abbot*, 705 F.3d at 724. And officers cannot use significant force on suspects who surrender, even if they have resisted or been noncompliant earlier. *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014).

Kowalczyk's takedown becomes even more unreasonable when the totality of the circumstances is considered. *Doornbos*, 868 F.3d at 583. When they approached the camper, the team of officers, including Kowalczyk, failed to announce their purpose and failed to await a response from inside. *Richards*, 520 U.S. at 387. Police may knock on a person's door, seeking a consensual interaction. *King*, 563 U.S. at 463. But that doesn't mean the person inside has to open the door. *Jardines*, 569 U.S. at 8. And police may, with probable cause but without a warrant, knock on a person's door and ask them to submit to arrest. *Payton*, 445 U.S. at 590. But, again, that doesn't mean the person inside has to open the door and submit. *Sparing*, 266 F.3d at 689–90.

So, how was Steinhoff supposed to know, without being given any time to consider the possibilities, that he had an obligation to answer the door, show his hands, and submit to arrest? A reasonable officer would know the answer—Steinhoff wasn't supposed to know because nobody told him.

And yet Steinhoff submitted anyway. He walked out and put his hands up. Kowalczyk faults him for not showing his hands immediately inside the camper. But the

9

blame for that cannot be placed on Steinhoff. Thus, a reasonable officer would know that Steinhoff did nothing wrong. A reasonable officer would know that Steinhoff had surrendered and was compliant. And therefore any reasonable officer would know that it was not necessary to tackle Steinhoff in order to arrest him. Kowalczyk's takedown of Steinhoff was therefore excessive, in violation of Steinhoff's Fourth Amendment right to be free from unreasonable seizure.

A. **Fourth Amendment Principles**

   1) **Excessive Force Principles**

Excessive force is evaluated under the Fourth Amendment. *Graham*, 490 U.S. at 388, 395. The evaluation, like most analyses under the Fourth Amendment, is objective rather than subjective. *Lester*, 830 F.2d at 712; *Phillips*, 678 F.3d at 520.

The Court must balance the amount of force used against the governmental need to use force. *Abbot*, 705 F.3d at 706. In conducting that balance, the Court must consider the totality of the circumstances. *Doornbos*, 868 F.3d at 583. Thus, "when assessing the totality of the circumstances under *Graham*," the Court should "tak[e] into account unreasonable police conduct prior to the use of force that foreseeably created the need to use it." *Id.* (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 429, n.* (2017)).

As part of the totality of the circumstances in analyzing the reasonableness of force, the Court should specifically consider: (1) the severity of the crime that is the subject of the arrest, (2) whether the suspect poses a safety threat to anyone, and (3) whether the suspect "is *actively* resisting arrest or *attempting* to flee and evade arrest." *Abbott*, 705 F.3d at 724 (emphasis added) (citing *Graham*, 490 U.S. at 396).

And it was clearly established in the Seventh Circuit in October 2018 that law enforcement officers may not use significant force on subdued, nonresistant, and non-fleeing suspects—which the Seventh Circuit recently reiterated. *Snowden v. Henning*, No. 21-1463, 2023 WL 4195838, at *7 (7th Cir. June 27, 2023). For at least 20 years, it has been "well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects." *Abbott*, 705 F.3d at 732 (analyzing excessive force in a qualified immunity analysis).

Even more specifically, it is excessive for an officer to grab and takedown a suspect when the suspect "had not been a threat to officers, was docile and cooperative, and did not resist in anyway until the officers applied unnecessary force." *Id.* (parenthetically citing *Morfin*, 349 F.3d at 1005).

Finally, "[t]his prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller*, 761 F.3d at 829.

2) **Warrant Execution Principles**

As a general rule, when law enforcement officers are executing a warrant on a dwelling, they "must knock on the door and announce their identity and purpose before attempting forcible entry." *Richards*, 520 U.S. at 387; *accord Green v. Butler*, 420 F.3d 689, 696 (7th Cir. 2005)). "One purpose of the rule is to protect the privacy of the occupants and to give them an opportunity to prepare for the agents' entry, allowing them 'to pull on clothes or get out of bed.'" *Green*, 420 F.3d at 698 (quoting *Richards*, 520 U.S. at 393, n.5). Another purpose is to protect against "significant dangers for the officers, who, in entering

unannounced, expose[] themselves to the risk that an occupant [could] mistake their entry for an invasion and reasonably [might] take defensive measures to protect himself from the perceived, though mistaken, threat." *Id.*

### 3) Arrest Inside a Dwelling Principles

Absent a warrant or exigent circumstances, a law enforcement officer may not arrest someone inside a home without a warrant, even if there's probable cause. *Payton*, 445 U.S. at 590. But police may also seek consensual encounters to the same extent that any ordinary citizen might. *King*, 563 U.S. at 463; *Jardines*, 569 U.S. at 8. Thus, an arrestable suspect, although no warrant has been issued, may choose to exit his home and submit to the police: "if the police go to an individual's home without a warrant, knock on the door, announce from outside the home that the individual is under arrest when she opens the door to answer, and the individual acquiesces to a slight entry to complete the arrest,[] the entry is reasonable under the Fourth Amendment and consistent with *Payton.*" *Sparing*, 266 F.3d at 690 (note omitted) (citing and discussing the holding in *United States v. Berkowitz*, 927 F.3d 1376, 1387 (7th Cir. 2001)). And Steinhoff, as an overnight guest in the camper, had a reasonable expectation of privacy inside the camper. *Minnesota v. Olson*, 495 U.S. 91, 97–100 (1990).

### B. It was unreasonable for Defendant Kowalczyk to tackle Plaintiff Steinhoff.

Steinhoff submitted to arrest. He was ordered to show his hands, come outside, and turn around. He did so. He even did one better. He gave the universal sign of surrender: He put his hands up. All Kowalczyk had to do to finish the arrest was handcuff him. Thus, simply stated, Kowalczyk violated Steinhoff's Fourth Amendment rights by "employing

greater force than [was] reasonably necessary to make the arrest." *Abbott*, 705 F.3d at 724 (quotes and source omitted) (cleaned up).

Moreover, Kowalczyk and the other officers are responsible for making the scene more tense than it needed to be. Kowalczyk was not granted the no-knock warrant he asked for. PPFOF, ¶¶15–16. He was there when the officers violated the warrant and pulled open the door without announcing their purpose or waiting for a response to their call of "Sheriff's Department." *Id.*, ¶¶30–37; *see Richards*, 520 U.S. at 387. He therefore knew that Steinhoff had been surprised. He himself could've announced at any time that they were serving a search warrant and therefore were detaining or arresting Steinhoff. More was required, but he could have, *at the very least*, told Steinhoff he was being detained. For all Steinhoff knew, he had the right to stay in the camper and wait for the officers to obtain a warrant for his arrest. *Sparing*, 266 F.3d at 690. For all he knew, he had the right to not submit to arrest *even after the door was open*. *Id.* ("We also recognized that a person does not surrender reasonable expectations of privacy in the home by simply answering a knock at the door . . ."). Thus, to the extent Steinhoff did not show his hands when commanded to, this was the foreseeable result of Kowalczyk's own unreasonable police conduct. *Doornbos*, 868 F.3d at 583.

And even besides the direct case law establishing that officers cannot take down a subdued, compliant suspect, *Abbot*, F.3d at 724 (citing *Morfin*, 349 F.3d at 1005), the *Graham* factors lead to the same result. *Graham*, 490 U.S. at 396.

### 1) Steinhoff was not suspected of having committed a violent crime.

Steinhoff was suspected of and arrested for dealing and possessing methamphetamine. PPFOF, ¶55. Although these are felonies, they are not crimes of violence. Indeed, in *Richards*, the Supreme Court concluded that probable cause of drug dealing, by itself, does not categorically create an exigency that justifies dispensing of the knock-and-announce requirement. *Richards*, 520 U.S. at 387–88. Nor can it be that police may *always* tackle a known drug dealer when arresting him, regardless of all other facts.

### 2) Steinhoff, at the time he was taken down, did not pose a threat to the officers.

The officers, who had just surprised Steinhoff, saw no signs that Steinhoff was armed. PPFOF, ¶¶36–37. Moreover, when Kowalczyk tackled Steinhoff, Steinhoff was following orders and had raised his hands in the air. That Steinhoff may have broken the law in the past does not mean that he was a threat to the officers *at the time* Kowalczyk used force on him. *Miller*, 761 F.3d at 829. In other words, Steinhoff did not pose an "immediate" threat to the officers. *Graham*, 490 U.S. at 396. Indeed, Kowalczyk made the situation more dangerous by taking Steinhoff to the ground. Even under Kowalczyk's most favorable view of the facts, in which Steinhoff refused to allow himself to be handcuffed on the ground, it was Kowalczyk who provoked that response.

### 3) Steinhoff was not fleeing or evading arrest.

Again, the video is clear: Steinhoff was following orders, he was moving slowly and carefully, and he put his hands up. No reasonable view of the evidence would allow the jury to conclude that he was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 F.3d at 386. What more was Steinhoff supposed to do? He was surprised

by a group of armed police officers pulling the camper door open and pointing firearms at him. He behaved reasonably: he came outside, turned around, and put his hands up.

### C. Kowalczyk is not entitled to qualified immunity.

The standards here were clearly established. To overcome qualified immunity, the plaintiff must show that his constitutional rights were violated and that the violated right was clearly established. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). The second prong can be proved in one of two ways: Plaintiffs "must either (1) present case law that has articulated both the right at issue and applied it to a factual circumstance similar to the one at hand or (2) demonstrate that the 'contours of the right are so established as to make the unconstitutionality obvious.'" *Ault v. Speicher*, 634 F.3d 942, 946 (7th Cir. 2011) (quoting *Boyd v. Owen*, 481 F.3d 520, 526–27 (7th Cir. 2007)).

First, as discussed above, Defendant Kowalczyk violated Plaintiff Steinhoff's Fourth Amendment right to be free from unreasonable seizure.

And second, Steinhoff's right was clearly established under both present case law and by constitutionally obvious contours. The Seventh Circuit has said repeatedly that officers may not use significant force on subdued, compliant, non-resisting suspects. *Abbott*, 705 F.3d at 732; *Morfin*, 349 F.3d at 1005; *Miller*, 761 F.3d at 829; *see Snowden*, 2023 WL 4195838, at *7 ("Officers have clear guidance on the level of force that is reasonable when arresting a suspect who does not resist"). Also, the rule in the Seventh Circuit, that an excessive force analysis includes the entire totality of the circumstances including unreasonable police conduct, has been established since 2017. *Doornbos*, 868 F.3d at 583. And the requirement that officers knock, announce their presence, announce their purpose, and

wait for a response has been established for decades. *Richards*, 520 U.S. at 387; *Wilson v. Arkansas*, 514 U.S. 927, 931–33 (1995).

Thus, if Detective Kowalczyk raises the defense of qualified immunity, the Court should reject it.

## V. CONCLUSION

Detective Kowalczyk's actions were captured on video. Steinhoff complied with police commands as much as possible. He surrendered. He put his hands up. And Kowalczyk took him to the ground anyway. It was not reasonably necessary for him to do so. *Abbott*, 705 F.3d at 724. The Court should therefore grant Steinhoff's motion for partial summary judgment as to liability against Kowalczyk.

Respectfully submitted,

Dated: 14 July 2023,

STRANG BRADLEY, LLC
Attorneys for Plaintiff

/s/ James Odell
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
James Odell
  Wisconsin Bar No. 1131587
Strang Bradley, LLC
613 Williamson St., Ste. 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
James@StrangBradley.com