IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RYAN LEWIS STEINHOFF,

                 Plaintiff,                     OPINION AND ORDER

  v.

                                                              21-cv-664-wmc

MATTHEW MALOVRH,

                 Defendant.

---

This lawsuit arises out of a search warrant and arrest in Medford, Wisconsin, on October 28, 2018. Plaintiff Ryan Steinhoff contends that during his arrest, defendant Clark County Sheriff's Investigator Matthew Malovrh violated his Fourth Amendment rights by using unreasonable force while he was already on the ground and complying with his being taken into custody. Plaintiff seeks compensatory and punitive damages. The case is scheduled for a jury trial on January 29, 2024, with a final pretrial conference ("FPTC") on January 19, 2024, at 10:00 a.m. The following order addresses the parties' motions in limine.

OPINION

I. Motions in Limine

The court addresses the parties' pending motions in limine below for discussion at the final pretrial conference.

    A. Plaintiff's omnibus motion in limine (dkt. #75)

        1. **Exclude evidence regarding the items discovered during the search of the trailer after plaintiff was arrested and taken into custody**

Defendant contends that evidence about the items recovered from plaintiff's trailer during the search warrant is relevant because they provide an explanation for plaintiff's

alleged resistance and the seriousness of the crime for which he was arrested. Plaintiff argues that any evidence discovered or events that occurred after the challenged use of force has no relevance to the issue in this case. The relevant test is whether, in light of the facts and circumstances known to defendant *at the time of the challenged use of force*, defendant's actions were objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Because any arguable relevance of any evidence discovered post-arrest is marginal, at best, to this test and likely to be highly prejudicial, plaintiff's first motion in limine is GRANTED.

> **2. Preclude the jury from hearing evidence relating to the nature of plaintiff's criminal convictions, the length of his prison sentence, or other irrelevant details of his criminal history**

Plaintiff concedes, as he must, that his character for truthfulness can be impeached by evidence of his criminal convictions under Fed. R. Evid. 609. However, he argues that "the details of the prior conviction[s] should not [be] exposed to the jury[,]" *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000), particularly when unduly prejudicial. Defendant seeks to admit evidence of plaintiff's convictions in 2001, 2003, 2006, 2017, and 2022 because they were each punishable by sentences greater than a year in prison, and because they affect plaintiff's credibility. For the following reasons, plaintiff's second motion in limine is GRANTED IN PART and DENIED IN PART.

In particular, plaintiff's 2022 homicide conviction -- and the events giving rise to it -- occurred well after the period relevant to his Fourth Amendment claim. Revealing the nature of this conviction or his subsequent sentence to the jury would be profoundly prejudicial, particularly compared to its relevance in accounting for his character for

2

truthfulness. As such, defendant may only ask plaintiff as to the number of felonies for which he has been convicted. Provided the plaintiff answers honestly, the impeachment shall go no further. However, should plaintiff deny one or more of his convictions, then defendant may impeach with evidence establishing the dates and titles of those convictions. Even then, defendant's counsel must redact any reference to plaintiff's *homicide* conviction or ongoing incarceration for that conviction from the exhibits they intend to use at trial.

Of course, there is a separate use for some of plaintiff's criminal history, since the defendant participated in a discussion of plaintiff's past crimes during the briefing before the search warrant was executed, including plaintiff's convictions for robbery with the use of force, aggravated battery, and resisting an officer. Defendant's knowledge of this history may be relevant to the jury's assessment of the reasonableness of his actions while taking plaintiff into custody. *Graham*, 490 U.S. at 397. Accordingly, defendant may elicit testimony from other witnesses, but only to the extent that they were discussed in that briefing and only from witnesses with personal knowledge of that discussion.

3. **Preclude the jury from hearing evidence of plaintiff's mental health diagnoses that are unrelated to the claim at issue**

This motion is GRANTED, unless plaintiff opens the door in his direct testimony, and then only for impeachment purposes. Even then, defendant must confirm an opening at sidebar before proceeding to impeach on this basis. Similarly, any exhibits offered into evidence must be properly redacted to reflect the court's ruling.

4. **Preclude evidence relating to any internal investigations into whether defendant engaged in wrongdoing**

This motion is GRANTED as unopposed.

5. **Preclude defendant from referring to the jury as taxpayers or implying that a damage award would be paid with taxpayer money**

This motion is also GRANTED as unopposed.

6. **Preclude defendant's expert, Robert Willis, from testifying in this matter**

Plaintiff seeks to exclude the testimony of defendant's police practices expert, Robert Willis, on the grounds that it has no relevance to the constitutional question before the jury and would be unhelpful to their deliberations. Defendant counters that Willis's testimony is being presented to provide insight into an officer's training and frame of mind when apprehending a suspect, and that Willis can provide context as to how an objectively reasonable officer would act.

The admissibility of expert testimony is governed by Fed. R. Evid. 702, as revised in response to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v.. Carmichael*, 526 U.S. 137 (1999), and amended in 2023. Under Rule 702, a witness qualified as an expert may provide an opinion "if the proponent demonstrates to the court *that it is more likely than not* that" his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" (emphasis added).

The inquiry for admitting expert evidence breaks down into three general areas: (1) the testimony must be "helpful," which necessarily implicates the relevance requirements

4

of Fed. R. Evid. 401–403; (2) the expert must be qualified by "knowledge, skill, experience, training, or education"; and (3) the testimony must be reliable and fit the facts of the case. *See* Fed. R. Evid. 702. Although the Amendments to Rule 702 that took effect on December 1, 2023 do not impose "any new, specific procedures[,]" they clarify that the proponent of expert testimony must meet Rule 702's substantive standards for admissibility by a preponderance of the evidence.

The relevant standard for a Fourth Amendment excessive force claim is "objective reasonableness." What constitutes "reasonableness" when using force while apprehending a suspect is "'not capable of precise definition or mechanical application' but 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir.2005) (quoting *Graham*, 490 U.S. at 396).

Willis's expert report contains four opinions: (1) the body-worn camera evidence in this case contradicts plaintiff's claims in his Amended Complaint, as does plaintiff's lack of medical evidence; (2) defendant's use of force to arrest plaintiff was "based upon officer training, experience and [plaintiff's] reported response . . . to his impending arrest"; (3) defendant's use of force was "in accordance with [county] Policy and Training" and "the State of Wisconsin Defensive and Arrest Tactics Manual"; and (4) "if officer versions of the facts are accurate, all decisions made, and actions taken that day were based upon training and department policy" and "all force used was in accordance with force analysis

5

factors taught to all Wisconsin officers." (Dkt. #75-2, at 18-28.) For the reasons described below, the first three opinions appear to usurp the jury's role as the finder of fact as to the ultimate question in this case.

Willis's first opinion, regarding the probative value of the evidence in this case, is plainly inadmissible. Only the jury can weigh the value of any evidence, or its absence, in this case.

Similarly, Willis's second and third opinions, regarding the role and impact of defendant's police training and his adherence to relevant department policies have the potential to usurp the jury's role and to confuse the jury as to the underlying constitutional question that they must answer -- particularly if not couched with the assumptive language in Willis's fourth opinion ("if the officer's version of the facts are accurate").

Defendant contends that Willis's testimony is being presented to provide insight into an officer's training and frame of mind when apprehending a subject, not to guide jurors through accepted police practice for a given situation. However, that is a distinction without a difference. An expert's opinion "into whether or why" an officer used excessive force would be "of little value except as to possibly causing confusion" and can bear a "substantial risk of prejudice." *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) (citations omitted). As the Seventh Circuit has consistently held, a claim brought under 42 U.S.C. § 1983 is intended to protect "plaintiffs from constitutional violations, not violations of . . . departmental regulations and police practices," *id*. at 454 (collecting cases), and it is a *jury's* task to "determine how a reasonable officer would act in the

6

circumstances, not how an officer in a particular local police department would act." *United States v. Brown*, 871 F.3d 532, 538-39 (7th Cir. 2017).

In particular, this is not the kind of case where a specialized understanding of forensic or ballistic evidence could inform a jury's credibility determination; indeed, the relevant evidence here is in the form of witness testimony and video evidence, and well within a jury's ability to understand and evaluate. *Id*. at 538. ("The everyday experience of lay jurors fully equips them to answer the reasonableness question when a case involves facts that people of common understanding can easily comprehend.") (citation and internal quotation marks omitted). Even if Willis's testimony could offer some specialized understanding of relevant police training and policies regarding use of force, most of his analysis is too dependent on impermissible credibility determinations about plaintiff's conduct, the relative probative value of video evidence, and his evaluation of this defendant's actions during plaintiff's arrest, as opposed to general training and policies for officers.

Finally, Willis's fourth opinion -- that accepting defendant's description of events as "accurate," his decisions and actions in taking plaintiff into custody were based on his training, department policy, and state "force analysis factors" -- has the potential to confuse the jury and usurp its role as the ultimate arbiter of the facts, especially since compliance with any training and policy is only *one* factor the jury may consider in assessing the objective reasonableness of the officer's actions here. Still, the court is unable to conclude that Willis's specialized knowledge as to the training, policy, and dynamics of taking a person into custody would *not* be helpful to a lay jury.

Accordingly, while defendant has not yet met his burden to show that it is likelier than

7

not that Willis's testimony would help the jury to understand the evidence or to determine a fact in issue, his counsel will be allowed to make a further proffer as to the scope and use of Willis's fourth opinion at the FPTC. For these reasons, this motion is GRANTED IN PART and RESERVED IN PART.

   7. **Provide an order directing the Wisconsin Department of Corrections to allow plaintiff to be dressed in civilian clothing and restrained by non-visible methods during trial**

Plaintiff's unopposed request to appear in civilian clothing and wear nonvisible restraints at trial is GRANTED, with the following caveats: (1) plaintiff's counsel must arrange for civilian clothing to be delivered to the court by Thursday, January 25, so that it may be screened by the U.S. Marshal; (2) the Wisconsin Department of Corrections' transporting officers must comply with U.S. Marshal policies regarding restraints in transporting plaintiff to the courthouse; and (3) the parties must contact the Wisconsin Department of Corrections regarding use of a stun belt during trial. In addition, the court will consider any input from the transporting officers regarding the appropriate level of restraints for plaintiff during trial.

   B. **Defendant's motions in limine (dkts. ##61-63; 67-69; 81)**

   1. **Preclude any argument based on the Golden Rule or suggestions that the jury put themselves in the place of the plaintiff (dkt. #61)**

Upon the parties' stipulation, this motion is GRANTED.

   2. **Sequester any non-party witnesses from the courtroom (dkt. #62)**

Upon the parties' stipulation, this motion is GRANTED.

3. **Preclude any argument relating to claims dismissed on summary judgment (dkt. #63)**

This motion is GRANTED with some clarification. Neither party may discuss *claims* that were dismissed earlier in this case or make arguments inconsistent with those rulings. However, either party may elicit testimony regarding relevant facts surrounding the circumstances of defendant's use of force remaining in this case, whether or not also related to those claims previously dismissed. As noted above, however, facts relating to the evidence discovered *after* the challenged use of force are not relevant.

4. **Admit plaintiff's prior convictions pursuant to Fed. R. Evid. 609 (dkt. #81)**

This motion is the inverse of plaintiff's second motion in limine. (Dkt. #75, at 2.) For the same reasons -- and with the same caveats and admonitions -- this motion is GRANTED IN PART and DENIED IN PART. The parties will only be allowed to elicit evidence about (1) the number of felonies for which plaintiff has been convicted, and (2) plaintiff's criminal history as discussed in the pre-search warrant briefing, to the extent witnesses have personal knowledge of that briefing.

5. **Bar any evidence or request for damages that have not been itemized (dkt. #67)**

This motion is GRANTED. Further, plaintiff contends that he will not be calling expert witnesses to establish damages in this matter, nor is he making a claim for medical expenses or other itemized damages. However, plaintiff is entitled to testify to the pain and emotional suffering he experienced as a result of the claimed excessive force. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 865 (7th Cir. 2010).

      6. **Preclude plaintiff from presenting or eliciting opinion testimony from any witnesses regarding medical or mental health care that does not rise to the level of medical certainty or causation (dkt. #68)**

Plaintiff opposes this motion, but as discussed above, plaintiff is entitled to testify about any pain and emotional suffering he experienced that in his view was triggered by the claimed excessive use of force, understanding that this may open the door for impeachment as to other, possible underlying causes for that pain and suffering. Accordingly, this motion is RESERVED pending the introduction of any evidence that may involve opinions regarding medical certainty or causation.

      7. **Preclude plaintiff from arguing execution of the search warrant was improper or causal of the plaintiff's excessive force claim (dkt. #69)**

Like defendant's Third Motion in Limine (dkt. #63), this motion is GRANTED with some clarification. Neither party may discuss *claims* that were dismissed earlier in this case. Within the bounds set forth above, any party may testify regarding relevant facts and circumstances around the remaining use-of-force claim, whether or not also related to claims previously dismissed.

## II. Voir Dire, Jury Instructions and Trial Exhibits

The court will share its proposed voir dire and jury instructions later today. Any objections to the parties' respective trial exhibits will be discussed at the FPTC tomorrow, or at least any for which an objection remains, requiring both sides to have filed their exhibits in Box.com. Any questions as to how to file the exhibits should be directed to the Clerk's Office.

ORDER

IT IS ORDERED that:

1) Plaintiff's omnibus motion in limine (dkt. #75) is GRANTED, GRANTED IN PART, DENIED IN PART, and RESERVED IN PART as set forth above.

2) Defendant's motions in limine (dkts. ##61-63; 67-69; 81) are GRANTED, GRANTED IN PART, DENIED IN PART, and RESERVED as set forth above.

3) The parties should be prepared to address the court's rulings on the parties' motions in limine at the FPTC tomorrow.

Entered this 18th day of January, 2024.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge